FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| W. DANA VENNEMAN and THEODORE COLLINS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BMW FINANCIAL SERVICES NA, LLC and FINANCIAL SERVICES VEHICLE TRUST,<br><br>Defendants. | Civil Action No. 09-5672 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Pending before this Court are the parties' cross motions for partial summary judgment. (D.E. Nos. 59, 60). The issue is whether the capitalized cost reduction payments ("CCR") paid by Plaintiffs W. Dana Venneman ("Venneman") and Theodore Collins ("Collins") (collectively, "Plaintiffs") at the inception of their automotive leases constitute rent paid in advance under the Servicemembers Civil Relief Act ("SCRA"), codified at 50 U.S.C.A. App. § 535(f). Under Section 535(f), "[r]ents or lease amounts paid in advance for a period after the effective date of termination of the lease shall be refunded to the lessee by the lessor (or the lessor's assignee or the assignee's agent) within 30 days of the effective date of the termination of the lease." 50 U.S.C.A. App. § 535(f).

Plaintiffs contend that the CCR is included within the protections afforded by Section 535(f). (D.E. No. 62, Plaintiffs' Brief in Opposition to Defendants' Motion for Partial Summary

1

Judgment ("Pl. Opp. Br.") 7). Therefore, since Plaintiffs believe that CCR is covered by Section 535(f), they argue that they should receive a pro-rated refund of the CCR based on the number of months left on the lease at the time of termination. (*Id.*). Defendants BMW Financial Services NA, LLC ("BMW FS") and Financial Services Vehicle Trust's ("FSVT") (collectively, "Defendants") contend that the CCR is not prepaid rent and, therefore, that none of it should be refunded. (D.E. No. 59, Defendants' Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment ("Def. Br.") 25).

The Court has considered the submissions made in support of and in opposition to the instant motions, and heard oral argument, pursuant to Fed. R. Civ. P. 78. Based on the following reasons, Plaintiffs' motion for partial summary judgment is GRANTED in part[1] and Defendants' motion for partial summary judgment is DENIED.

## I. PROCEDURAL HISTORY

On January 13, 2012, Plaintiffs and Defendants both filed motions for partial summary judgment on Plaintiffs' fifth cause of action for a declaratory judgment as to whether the CCR paid by Plaintiffs at the inception of their automotive leases is rent paid in advance under the SCRA. (D.E. Nos. 59, 60). The Court held oral argument on the partial summary judgment motions on August 2, 2012. (D.E. No. 102). Since the parties relied only on the original enactment of SCRA in 2003, the Court asked the parties to submit supplemental briefing in light of the congressional amendment made in 2010. (D.E. Nos. 108, 111, 114). Following supplemental briefing, the Court held another oral argument on December 6, 2012. (D.E. No. 130).

---

[1] Plaintiffs' motion for partial summary judgment is granted only as to Plaintiff Venneman. The Court denies Plaintiffs' motion as it relates to Plaintiff Collins because there is a material dispute as to the circumstances surrounding the termination of his lease. *See infra*, at 15.

## II. FACTUAL BACKGROUND[2]

Plaintiffs Venneman and Collins each entered into a lease with Defendant BMW FS. (D.E. No. 59-2, Def. 56.1 Statement ¶¶ 71, 82). On October 6, 2005, Venneman leased a used 2006 BMW 330i from De Simone BMW Ltd. (*Id.* ¶ 71). Venneman's vehicle was valued at $42,336.24. (*Id.* ¶ 77). Venneman paid $6,000 at closing. (*Id.* ¶ 72). Seven hundred dollars was allocated to closing costs, and $5,289.88 was allocated to the CCR. (*Id.*). Venneman agreed to pay 36 monthly payments of $450.62 and could opt to purchase the vehicle at the conclusion of the lease for $26,800.20. (*Id.* ¶ 73). In total, Venneman paid $5,289.88 (the CCR) to the dealer and Defendants paid $37,046.36 when Defendants assumed Venneman's lease. (*Id.* ¶¶ 77, 78).

On February 27, 2008, Venneman was ordered to report for active duty and notified his lessor, BMW FS, that he elected to terminate his lease pursuant to Section 305 of the SCRA. (*Id.* ¶¶ 87, 88). Venneman turned in his vehicle on March 5, 2008. (*Id.* ¶ 91). On April 6, 2008, Venneman requested a partial refund of the CCR, claiming it was prepaid rent as defined by the SCRA. (*Id.* ¶ 92). BMW FS denied his request, advising him that the CCR was a down payment, not prepaid rent. (*Id.* ¶ 93).

On July 22, 2004, Collins leased a new BMW X5 3.0 from Thompson Automotive Group ("TAG"). (*Id.* ¶ 82). Collins paid $5,935 when he leased the vehicle, $4,600 of which TAG allocated to CCR. (*Id.* ¶ 83). Collins traded in a 1995 Nissan Maxima that had a net trade-in allowance of $3,500 towards the amount due to TAG. (*Id.* ¶ 84). Therefore, Collins was only required to submit $2,435 in cash at the closing. (*Id.* ¶ 85). Collins agreed to pay 39 monthly payments of $499.00 and had the option to purchase the vehicle at the conclusion of his lease for

---

[2] Unless otherwise noted, the following facts are undisputed.

$30,132.00. (*Id.* ¶ 86). On September 24, 2004, Collins received orders to report to active duty and terminated his lease pursuant to the SCRA. (*Id.* ¶ 89). Collins returned the vehicle on May 1, 2005. (*Id.* ¶ 90). On May 1, 2005, Collins requested a pro rata refund of the CCR. (*Id.* ¶ 94). BMW FS did not issue a refund. (*Id.* ¶ 95).

## III. LEGAL STANDARD

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. *See Celotex,* 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).[3]

---

[3] This summary judgment standard is equally applicable when parties file cross motions for summary judgment. *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).

4

## IV. DISCUSSION

### a. Parties' Contentions

The parties' cross motions raise the issue of whether, under 50 U.S.C.A. App. § 535(f), CCR payments constitute "rents or lease amounts paid in advance." Based on principles of statutory construction and the description of the CCR in Plaintiffs' leases, Plaintiffs contend that the CCR is both prepaid rent and a lease amount. (Pl. Opp. Br. 2-3).

On the other hand, Defendants argue that principles of statutory construction require the Court to find that the CCR is not prepaid rent or lease amounts. (D.E. No. 67, Defendants' Reply Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment ("Def. Reply") 14). Defendants contend that the CCR should be treated like a down payment—a payment that is made as an initial payment in a lease that reduces the capital cost or is applied to other amounts due at lease signing. (D.E. No. 130, Transcript on Motion for Summary Judgment, Dec. 6, 2012 ("12/6/12 Tr."), 59:12-15). Defendant further argues that if CCR operates like a down payment, it is not prepaid rent or lease amounts, and it is not amortized over the life of the lease. (D. E. No. 105, Transcript on Motion for Summary Judgment, Aug. 2, 2012 ("8/2/12 Tr."), 7:3-8).

Further, Defendants contend that "rents" and "lease payments" are synonymous because the terms are used interchangeably in the lease and the SCRA. (Def. Reply 14-15). Accordingly, Defendants contend that the Court must treat "lease payments" the same as "rent," and consider CCR as part of neither. (*Id.*). Defendants also argue that "lease amounts" only include periodic payments and not a lump-sum payment. (*Id.*). Finally, Defendants argue that it would be unfair for the Defendant lessors to refund the CCR because the dealers—not Defendant lessors—receive the CCR. (Def. Br. 2, 28-29, 32-33).

### b. Analysis

Under the SCRA, a servicemember may terminate

> [a] lease of a motor vehicle used, or intended to be used, by a servicemember or a servicemember's dependents for personal or business transportation if --
> **(A)** the lease is executed by or on behalf of a person who thereafter and during the term of the lease enters military service under a call or order specifying a period of not less than 180 days (or who enters military service under a call or order specifying a period of 180 days or less and who, without a break in service, receives orders extending the period of military service to a period of not less than 180 days); or
> **(B)** the servicemember, while in military service, executes the lease and thereafter receives military orders—
>    **(i)** for a change of permanent station--
>     **(I)** from a location in the continental United States to a location outside the continental United States; or
>     **(II)** from a location in a State outside the continental United States to any location outside that State; or
>    **(ii)** to deploy with a military unit, or as an individual in support of a military operation, for a period of not less than 180 days.

50 U.S.C.A. App. § 535 (b)(2)(A) & (B).

Such termination is effective after delivery of written notice to the lessor as of the date the motor vehicle is returned to the lessor. 50 U.S.C.A. App. § 535(d). "Rents or lease amounts paid in advance for a period after the effective date of termination of the lease shall be refunded to the lessee by the lessor (or the lessor's assignee or the assignee's agent) within 30 days of the effective date of the termination of the lease." 50 U.S.C.A. App. § 535(f).

This is a case of first impression. In analyzing the issue before the Court, the Court must use statutory interpretation. When considering whether CCR constitutes prepaid rent or lease amounts, the Court must give effect to Congress's intent. *See Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998) (citations omitted). To do so, the Court must begin with an examination of the plain language of the statute. *Id.* (citations omitted). If the

statutory language is unambiguous, the Court need not inquire further. *See Santa Fe Med. Servs., Inc. v. Segal (In re Segal)*, 57 F.3d 342, 346 (3d Cir. 1995). To determine whether the statutory language is ambiguous, the Court must examine "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Marshak v. Treadwell*, 240 F.3d 184, 192-93 (3d Cir. 2001) (quotations omitted). In addition, "[i]t is a black letter rule of statutory interpretation that, if possible, a court should construe a statute to avoid rendering any element of it superfluous." *First Nat'l. Bank. Ass'n v. F.D.I.C.*, 79 F.3d 362, 367 (3d Cir. 1996).

Thus, the Court must give meaning to all of a statute's provisions. *See United States v. Higgins*, 128 F.3d 138, 142 (3d Cir. 1997). With that framework in mind, the Court will now determine whether CCR is "rent or lease amounts paid in advance" as it relates to Venneman's and Collins's leases.

### i. Statutory language

Defendants contend that the Court must give the same meaning in all provisions of the statute to the terms "rent" and "lease amounts" because they appear consecutively in Sections 535(e) & (f). (Def. Reply 14). Section 535(e) is titled "Arrearages and other obligations and liabilities" and explains how the lessor may collect rent or lease amounts that are unpaid, due, and owing at the time of termination. Defendants argue that the CCR cannot be characterized as a "lease amount" because a one-time payment can never be in arrears. (Def. Reply 14-15).

Plaintiffs disagree and highlight that Congress specifically added the term "lease amounts" to § 535(e) and (f) of the Act, "unequivocally demonstrating that the term "lease amounts" was intentionally (and non-superfluously) added in conjunction (and therefore explicitly associated) with the inclusion of motor vehicle leases provisions." (D.E. No. 108,

7

Plaintiffs' Supplemental Brief in Support of Their Motion for Partial Summary Judgment, ("Pl. Supp. Br.") 7). Thus, Plaintiffs argue, Congress explicitly "intended the word 'rent' to refer to real estate-related obligations and 'lease amounts' to refer to the corresponding motor vehicle lease obligations." (*Id.*).

The Court agrees with Plaintiffs. Notably, in 50 U.S.C.A. App. § 535(e), Congress delineated between "leases of premises" and "leases of motor vehicles." *See* 50 U.S.C.A. App. § 535(e)(1) (referring to leases of premises) & 50 U.S.C.A. App. § 535(e)(2) (referring to leases of motor vehicles). In separating out the two types of leases, Congress referred to amounts due and owing on a lease of a premises as a "rent amount," (50 U.S.C.A. App. § 535 (e)(1)), and referred to amounts due and owing on a lease of a motor vehicle as "lease amounts." (50 U.S.C.A. App. § 535 (e)(2)). Therefore, the Court must give weight to the fact that Congress intentionally distinguished between the two types of leases.

The next section of the Act—and the one primarily at issue here—§ 535(f), permits a servicemember to obtain a refund of both "lease amounts" and "rent" because it does not distinguish between "leases of premises" and "leases of motor vehicles" as § 535(e) does. A review of the plain language of the statute reveals that Congress did not choose to refer to the payments made for a lease of a motor vehicle as rent, but instead, opted to use a broader term— lease amounts.

Defendants argue that the Court should ascribe the same meaning to "lease amounts" in both § 535(e) & (f). They contend that the rules of statutory construction require the Court to "interpret identical language in consecutive subsections of a statute consistently." (Def. Reply 14) (citing *Nat'l Credit Union Admin. v. First. Nat'l Bank & Trust Co.*, 522 U.S. 479, 501 (1998) ("[T]he established canon of construction that similar language contained within the same

8

section of a statute must be accorded a consistent meaning.")). But Defendants' reliance on the *Nat'l Credit Union* case is misplaced. *Nat'l Credit Union* only speaks to "similar language *contained within the same section* of a statute." 522 U.S. at 501 (citing *only to subsection (b)* of 12 U.S.C. § 1759 (emphasis added)). Here, Defendants highlight two *separate* subsections of a statute—(e) & (f).

As such, the terms are not interchangeable in the lease or the SCRA. Indeed, Congress specifically used an "or" clause in § 535(f) when referring to the key terms presently at issue: rents or lease amounts. Because of the "or" clause inserted in § 535(f), this Court must give the clause its alternative meaning. Doing otherwise would be contrary to proper statutory interpretation: "It is a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker,* 533 U.S. 167 (2001)).

Contrary to Defendants' assertions, nothing in the statute limits the definition of "lease amounts" to only those amounts in arrears, those analogous to down payments, or any other restrictive construction offered by Defendants. Indeed, such a restrictive reading of the SCRA, as proposed by Defendants, would be inconsistent with the Supreme Court's previous interpretation of the SCRA. The Supreme Court has broadly interpreted sections of the SCRA in favor of servicemembers. *See Le Maistre v. Leffers*, 333 U.S. 1, 5-6 (1948); *Boone v. Lightner*, 319 U.S. 561, 575 (1943). Importantly, the Supreme Court has held that the "Act must be read with an eye friendly to those who dropped their affairs to answer their country's call." *Le Maistre*, 333 U.S. at 6 (citing *Boone*, 319 U.S. at 575).

9

### ii. Secondary sources

Preliminarily, the Court notes that Congress did not define either "rent" or "lease amounts" in the SCRA. *See* 50 U.S.C.A. App. § 511 (definitions). Thus, the Court must look to secondary sources to give meaning to the plain language of the statute. *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 747 (N.J. 2009).

Rent is defined as "[c]onsideration paid, usu. periodically, for the use or occupancy of property (esp. real property)." *Black's Law Dictionary* (9th ed. 2009) ("*Black's Law*"). A lease is defined as "[a] contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration, usu. rent." *Black's Law*. To lease means "[t]o grant the possession and use of (land, buildings, rooms, movable property, etc.) to another in return for rent or other consideration." *Id.*

According to the definition of the verb "lease," the lessee has possession of the vehicle in return for rent or other consideration. *Black's Law*. Based on this definition, the Court finds that lease amounts constitute, at the very least, "other consideration." The CCR falls into this definition as "other consideration" because it is a payment made by the lessee in return for possession of the vehicle.

The Court also considers documents offered by the parties as instructive to decipher the meaning of CCR. Plaintiffs urge the Court to look to Regulation M of Consumer Leasing ("Reg. M"), (12/6/12 Tr. 18:14-23), promulgated by the Federal Reserve, in the Code of Federal Regulations. *Miller v. Nissan Motor Acceptance Corp.,* 362 F.3d 209, 216 (3d Cir. 2004) ("The Federal Reserve Board has been given the authority to issue rules implementing the [Consumer Leasing Act] . . . and the Board has exercised that authority by promulgating Regulation M.") (internal citations and quotations omitted). Reg. M defines CCR as "the total amount of any

10

rebate, cash payment, net trade-in allowance, and noncash credit that reduces the gross capitalized cost." 12 C.F.R. § 213.2. Notably, Reg. M does not define CCR as a down payment.

However, the Federal Reserve also publishes a "Guide to Vehicle Leasing" (the "Guide")—which Defendant urges the Court to rely on, (*see* 8/2/12 Tr. 9:19-25). The Guide likens CCR to a down payment and defines it as "[t]he sum of any down payment, net trade-in allowance, and rebate used to reduce the gross capitalized cost." Federal Reserve, Keys to Vehicle Leasing, http://www.federalreserve.gov/pubs/leasing/glossary.htm#c (last updated March 13, 2013).[4] It seems there is conflicting authority, from the same agency, on whether CCR is in fact a "down payment."

In light of such conflict, the Court finds Reg. M to be more persuasive because "the Supreme Court instructed that the [Federal Reserve] Board's interpretation of . . . Regulation M should be accepted so long as [it is] 'not irrational.'" *Miller v. Nissan Motor Acceptance Corp.,* 362 F.3d 209, 216 (3d Cir. 2004) (quoting *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 568 (1980)). Reg. M is a codified regulation, while the Guide issued by the Federal Reserve to consumers is just that, a guide to consumers. Thus, in line with Reg. M, CCR is not limited to being solely a "down payment." The Court finds that CCR is broader than that: it is "the total amount of any rebate, cash payment, net trade-in allowance, and noncash credit that reduces the gross capitalized cost." 12 C.F.R. § 213.2.

In addition to arguing CCR is not a "lease amount" under SCRA, Defendants also contend CCR is not "prepaid rent." The Court makes no determination as to whether CCR is or

---

[4] The Federal Reserve Comprehensive Guide to Vehicle Leasing defines a "down payment" as "[a]n initial cash payment in a lease that reduces the capitalized cost or is applied to other amounts due at lease signing." Elsewhere, the Guide explains: "The capitalized cost reduction for a lease is like a down payment when buying a car. The more you pay to reduce the capitalized cost, the lower your monthly payments will be." Fed. Reserve Comp. Guide to Vehicle Leasing, "Up-Front Costs," at 1, *available at*
www.federalreserve.gov/pubs/leasing/resource/different/upfront.htm (emphasis omitted).

is not "prepaid rent." Because the SCRA requires only that prepaid rent *or* lease amounts be returned to the servicemembers, and the Court finds that the CCR is a prepaid lease amount, the Court need not address the arguments regarding prepaid rent. Nonetheless, the Court notes that financial and automobile industry sources analogize CCR to prepaid or advanced rent.[5] Although Defendants point to other financial industry sources that analogize CCR to down payments, the Court is not persuaded by such sources primarily because nothing in 50 U.S.C.A. App. § 535 speaks to such limiting language.

To be sure, the Internal Revenue Service ("IRS"), which Plaintiffs also urge the Court to look to for guidance, (12/6/12 Tr. 25:11-25), has noted that when a taxpayer bank (like the financing-company Defendant at hand) "obtains a vehicle subject to a lease with a CCR payment, it receives an undeniable accession to wealth." I.R.S. Gen. Couns. Mem. 200131006 (Apr. 20, 2001) at 4. This is because, "[p]resumably, when a customer pays a dealer a CCR, [the taxpayer bank] uses these funds to settle its purchase obligation with the dealer." *Id.* The IRS further notes that when "a customer makes a CCR payment, all subsequent lease payments are reduced . . . [and the taxpayer bank] is willing to accept the lower lease payments over the term of the lease because it has received something of value when it purchases the vehicle." *Id.* Plaintiffs contend that such language speaks to the IRS treating CCR "as advanced payments of rent or payment in lieu of future rent for vehicles." (12/6/12 Tr. 26:5-7).

Thus, having reviewed the terms of the leases and the plain language of the SCRA, the Court finds that, in certain instances, CCR *can* constitute a prepaid lease amount that must be

---

[5] *See* "Dealing With Business—Auto Lease Problems IRS Doesn't Address," Federal Taxes Weekly Alert Art. 10: Vol. 43, No. 18 (May 1, 1997) ("Lessees often are required to make a cash payment when an auto lease is signed. Often, these payments buy down the monthly lease payments on the auto, and, as such, are the equivalent of advanced rent, a cost that is deductible over the lease term.") (quotations omitted).

returned to the lessee upon proper invocation of the protections of the SCRA. First, the terms of Venneman's and Collins's leases define CCR as part of the "amount due at lease signing or delivery." (D.E. No. 60-2, Booth Decl., Ex. A, §§ 5, 9). The CCR is also included in the "amounts I will have paid by the end of the Lease Term." (*Id.* § 8). As such, the Court finds that the language in Defendants' leases describe CCR as a lease amount, as contemplated by the SCRA.

### iii. Policy

Finally, characterizing the CCR as a lease amount would not result in a windfall for Plaintiffs, as suggested by Defendants. (Def. Reply 16). Defendants emphasize that they never received the CCR from the dealer. (Def. Br. 1, 28, 29). While Plaintiffs paid the CCR to the dealer and not directly to Defendants, Defendants benefited from the CCR because they only paid the dealer the difference between the purchase price and the CCR in order to receive title to the car. In other words, Defendants received the CCR as a credit towards the total purchase price and were able to take title to the car without paying the entire purchase price.

Therefore, as it relates to Venneman and Collins, requiring a prorated refund of the CCR would not be a windfall. In fact, construing CCR as anything but a lease amount, especially as a nonrefundable down payment as Defendants suggest, would result in a windfall for Defendants.[6] For example, a servicemember who gives ten-thousand dollars down on a thirty-thousand-dollar lease at lease inception, because he seeks to make lower monthly payments, would be unable to collect any portion of the ten-thousand-dollar initial payment if he is called to duty merely two months into the lease. The Court finds that such an inequitable scenario cannot comport with

---

[6] Defendants also argue that it would be a windfall to Plaintiffs because of the nonlinear depreciation of vehicles. (Def. Reply 17-18). Though the Court is mindful of such depreciation, Defendants fail to acknowledge the credit they receive for the CCR. And notwithstanding depreciation, Defendants also remain owners of the vehicle upon lease termination and are free to resell the vehicle, potentially leading to an even greater windfall for Defendants.

13

Congress's intent to protect servicemembers through the SCRA. Moreover, Defendants and Plaintiffs agree that CCR is the only mechanism available to reduce servicemembers' lease obligation. (*See* 12/6/12 Tr. 11:19-13:13; 38:22-39:6).

Thus, a plain reading of the statute, without imposing artificial limitations, and with guidance from secondary sources, compels this Court to find that CCR payments fall under "lease amounts" to be refunded. Notably, Congress passed the SCRA to "strengthen the rights and protections afforded U.S. military personnel called to active duty so that they are not harmed in civil, financial or legal proceedings." 149 Cong. Rec. H3688-03, 2003 WL 21025298, at *29 (May 7, 2003). Accordingly, Courts are to give broad protections to servicemembers when interpreting the statute. *See Boone*, 319 U.S. at 575 ("[SCRA] is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation."). Such an interpretation "leaves the soldier disentangled to pursue his fight for our material and spiritual heritage, and free to devote his entire energy to the defense needs of the nation." *Patrikes v. J.C.H. Serv. Stations*, 41 N.Y.S. 2d 158, 166 (N.Y. Ct. 1943).

If Congress wanted to limit the meaning of "lease amounts," it could have done so. Notably, Congress amended the SCRA in 2010. But, even after amendment, Congress did not limit the language in § 535(f).[7] As such, this Court "must presume that a legislature says in a statute what it means and means in a statute what it says." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 461-62 (2002) (internal citations and quotations omitted). Because no limiting language exists in § 535(f), and the spirit of the SCRA mandates construction in favor of

---

[7] The legislative history bolsters Plaintiffs' position that "lease amounts" is intentionally broad and lacking the more limiting "monthly payments" language advocated by Defendants. Specifically, Congress originally contemplated language in § 535(c) that included the term "monthly payment": "Lease with *monthly rent* . . . Termination of a lease providing for *monthly payment* of rent shall be effective 30 [sic] after the first date on which the next rental payment is due and payable after the date on which the notice is delivered." (*See* D.E. No. 108, Plaintiffs' Supplemental Brief in Support of Their Motion for Partial Summary Judgment ("Pl. Supp. Br.") at 6-7 (citing H.R. 100, 108th Congr., 1st Sess. (2003) at 10); D.E. No. 130, Tr. on Motion for Summary Judgment, ("12/6/12 Tr.") 16:5-15)).

servicemembers, this Court presumes Congress intended "lease amounts paid in advance" to include CCR.

Thus, this Court finds that Venneman's CCR payments are "lease amounts paid in advance," subject to prorated refund. Venneman paid the CCR to decrease the amount financed, which in turn decreased his monthly payments. (*See* D.E. No. 59-3, Decl. of Michael Hassen, Esq., Ex. A, Venneman Dep. Tr. 104:23-109:23). Consequently, the prorated amount (the seven months remaining) should be refunded to Venneman pursuant to 50 U.S.C.A. App. § 535(f) in the amount of 7/36ths of the total CCR. Accordingly, the Court grants his motion in part for summary judgment on Count Five.

The same analysis applies to Collins. But there is a material fact dispute as to the circumstances surrounding the termination of his lease. (*See* Def. 56.1 Statement ¶¶ 89, 90, 94, 95). Therefore, the Court denies summary judgment as to Collins.

## V. CONCLUSION

In sum, the Court finds that CCR is a lease amount pursuant to the SCRA. As such, the Court GRANTS Plaintiffs' motion for partial summary judgment as it relates to Venneman, and Defendants' motion for partial summary judgment is DENIED. An appropriate order shall accompany this opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
